IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHEN A. KEMPH, JR., )
 )
    Plaintiff, )
 )
 )
  v. ) Case 14 CV 00359
 )
 )
MICA CREEK-SAGAMORE CAPITAL PARTNERS )
(D/B/A "MCS CAPITAL PARTNERS"), JASON )
POLLACK, STEVEN DELUCA, ROBERT HAYES, )
AND CHARLES DUBROFF, )
 )
    Defendants. )

MEMORANDUM OPINION AND ORDER

Plaintiff Stephen A. Kemph, Jr.'s motion to remand based on this Court's lack of subject-matter jurisdiction is granted for the reasons stated below.

I.

On December 27, 2013, Plaintiff filed a ten-count complaint against Defendant MCS Capital Partners ("MCS") in the Circuit Court of Cook County, alleging various violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/14, as well as breach of contract stemming from a $762,000 bonus that Plaintiff claims MCS is withholding from him. Compl., Ex. B to Removal Not. [#1]. On January 17, 2014, MCS removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Removal Not. [#1]. Presently,

1

the parties' dispute concerns the citizenship of one of the MCS partners, Stephen DeLuca. Plaintiff argues that this Court lacks jurisdiction over this matter because, like Plaintiff, Stephen DeLuca, is a citizen of Illinois, thereby defeating complete diversity. MCS argues that Mr. DeLuca is a citizen of Arizona, thereby fulfilling the requirements of 28 U.S.C. § 1332(a)(1).

II.

Pursuant to 28 U.S.C. § 1441, a defendant may remove a state court action to federal court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441. A federal court has original jurisdiction where diversity of citizenship exists among all parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

"The mandate of limited federal jurisdiction must be honored by all." *Hart v. Terminex Internat'l,* 336 F.3d 541, 542 (7th Cir. 2003). The Seventh Circuit has been clear that it is my "non-delegable duty to police the limits of federal jurisdiction with meticulous care and to be particularly alert for jurisdictional problems in diversity cases in which one or more of the parties is neither an individual nor a corporation." *Id.* (quoting *Market Street Asscs. Ltd. v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991)). Both parties acknowledge that "the citizenship of the parties at commencement of the lawsuit governs under § 1332." *Miller v. Fryzel*, No. 12-2068, 499 Fex.Appx, 601, 603 (7th Cir. Jan. 14, 2013).

"Citizenship for the purposes of diversity jurisdiction is domicile, and domicile is the place one intends to remain." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). "Domicile is where a person intends to live over the long run." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). That is, "citizenship for the purpose of 28 U.S.C. § 1332 depends on domicile rather than residence." *Id.* "[D]omicile is a person's legal home, the 'permanent residence of a person or the place to which he [or she] intends to return even though he [or she] may actually reside elsewhere." *Koch v. Koch*, 450 F.3d 703, 712 n. 7 (7th Cir. 2006) (quoting Black's Law Dictionary 484 (6th Ed. 1990)).

The Seventh Circuit has long acknowledged that ascertaining a financially well-off individual's domicile in "this age of second homes and speedy transportation," can be difficult. *See Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991) (holding that defendant remained a citizen of Illinois despite the steps he took to move to Florida). For complex cases, courts must "glean intent from the following factors: current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Midwest Transit, Inc. v. Hicks*, No. 03-1227, 79 Fed.Appx. 205, 208 (7th Cir. Oct. 17, 2003); *24 Hour Fitness USA, Inc. v. Bally Total Fitness Holding Corp.*, No. 08 CV

3853, 2008 WL 4671748, * 3 (N.D. Ill. Oct. 21, 2008) (Lefkow, J.) ("While no individual factor is dispositive in determining domicile, courts rely on a variety of factors in their analyses, including current residence, location of belongings and personal property, voter registration, driver's license and vehicle registrations, place of employment, presence of family members, and extent of social involvement in the surrounding community, among others.").

"When facts relevant to subject-matter jurisdiction are disputed," the party asserting jurisdiction "must establish those facts by a preponderance of the evidence." *Miller,* 499 Fed.Appx. at 603. Finally, "[w]e must resolve genuine doubts about removal in favor of state court jurisdiction." *Northeastern Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 893 (7th Cir. 2013).

## II.

The analysis of Mr. DeLuca's domicile is no easy task given that he is a man who maintains strong personal ties to New Jersey, the state where he grew up; Arizona, where he currently resides; Illinois, the domicile of his spouse; and Utah, where he vacations frequently throughout the year. DeLuca Dep. 322:13-323:2. To aid this Court in its determination of Mr. DeLuca's domicile, both parties have produced prodigious amounts of data related to Mr. and Mrs. DeLuca's personal and professional lives, presumably pursuant to the Seventh Circuit's direction that when a party's citizenship

4

is contested, his "entire course of conduct may be taken into account," because "[i]t is not enough to simply establish physical presence, but in order to turn residence in fact into a domicile in law the party must show, by some objective act, his intention to maintain the residency indefinitely." *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993).

**Mr. DeLuca's Residence in Arizona**

Mr. DeLuca admits that he was a resident of Illinois from November 2011 until mid-January 2012 when he moved to Arizona. S. DeLuca Dec. [#15] at ¶ 6. While the number of days he is present in Arizona exceeds the number of days he spends in Illinois each year, the facts fail to prove that Arizona is where he intends to remain indefinitely.[1]

When asked how much he pays in rent for his Arizona housing, Mr. DeLuca stated that "[t]here's an arrangement that's made where I live in a house that I rent in Arizona." S. DeLuca Dep. at 16:8-10. He subsequently admitted that the payment for his housing in Arizona does not come out of his personal bank account; rather, MCS pays for the rent for the fully-furnished house where Mr. DeLuca lives. *Id.* at 16:11-14; 19:1-8; 61:5-10. Throughout his residency in Arizona, Mr. DeLuca has not personally made any rent payments, because apparently they "just get taken care of." *Id.* 46:9-10. Similarly,

---

[1] In 2013, Mr. DeLuca spent 166 days in Arizona and 116 days in Illinois. *Id.* at 148: 4-7; 10-12.

Mr. DeLuca has not paid any of the utility bills, nor does he know how those are paid. *Id.* at 55:10-56:10. The picture that emerges from Mr. DeLuca's deposition is that his housing in Arizona akin to corporate housing: he shares the house with a colleague, Jason Pollack, and a roving cast of MCS colleagues spends the night there when traveling to Arizona for MCS business meetings. *See id.* 58-60. The nature of his residence in Arizona is better characterized by transition and impermanence rather than that of a domicile where he intends to establish roots and remain indefinitely, as he has neither committed to choosing his own housing in Arizona, nor personally paying his rent or utilities. *See Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993) (an individual must intend to make his home in his domicile "indefinitely" for that state to count as his domicile for purposes of federal diversity jurisdiction purposes).

**Mrs. DeLuca's Residence in Illinois**

While the domicile of one's spouse is not dispositive, many courts have found that this factor carries significant weight. *See e.g., 24 Hour Fitness USA*, 2008 WL 4671748 at *5 ("Central to this 'center of gravity analysis' is the location of an individual's family— particularly his spouse and children."); *Viacom, Inc. v. Flynn*, No. 96 C 3131, 1997 WL 97697 (N.D. Ill. Feb. 27, 1997) (finding that despite business interests in Illinois, defendant's "substantial connections and personal intentions with respect to Florida," defeated his claim that he intended to remain in Illinois).

6

Mr. DeLuca testified that his wife is "the most important thing" to him. S. DeLuca Dep. at 111:14-20. It is an undisputed fact that Mrs. DeLuca is a resident of Illinois where she lives in an apartment on Chestnut Street ("Chestnut apartment"). Describing their long-distance marriage, Mr. DeLuca explained that

> [w]e both travel a lot for work. I live in Arizona. She lives in Chicago. We travel on average—she probably travels three or four days a week. We meet every single weekend. We meet in Arizona. We meet in Utah. We meet in Colorado. We meet up and down the East Coast. We meet in Illinois. So this is our—this is our living situation.

*Id.* at 66:16-23. Unlike the pre-furnished housing that is rented by MCS on behalf of Mr. DeLuca in Arizona, the Chestnut apartment contains several items of personalty that Mr. DeLuca purchased himself, including a TV, four computer monitors, a desk and chair, as well as an assortment of all-weather clothes and toiletries. *Id.* at 72:22-23; 73: 12-17; 76-81. Moreover, Mrs. DeLuca pays the rent for the Chestnut apartment out of a joint checking account that she owns with Mr. DeLuca. N. DeLuca Dep. 71:1-23. Mr. DeLuca also stores items in a storage space in the building on Chestnut. S. DeLuca Dep. at 86:6-8.

The fact that Mrs. DeLuca's domicile is Illinois, coupled with the fact that the rent for Mrs. DeLuca's Chestnut apartment is paid from money out of their joint account and many of Mr. DeLuca's personal items are stored there suggest that his center of gravity is in Illinois. Moreover, when asked about his reasons for living

7

in Arizona, Mr. DeLuca stated that he was there because "the office is there and our employees are there" (*id.* at 151: 6-7), which suggests that Arizona is solely the center of his professional life, which is supported by the fact that Mr. DeLuca spent most major holidays, including Thanksgiving and Christmas, in Chicago with Mrs. DeLuca. Plt. Rep. Br. [#52] at 14.

**Official State Documents**

Other indicia that Mr. DeLuca intended to make Arizona his permanent home are also absent. He has not registered to vote in Arizona, nor does he have an Arizona driver's license. S. DeLuca Dep. at 99:3-11; 106: 7-10. His passport does not indicate that he is a resident of Arizona. *Id.* While Mr. DeLuca does have an Arizona identification card that was issued on or about May 27, 2014, months after this lawsuit was filed, and it lists as his address, not the house that he rents in Arizona, but MCS's current mailing address. *Id.* 99:22-100:3. Mr. DeLuca's lack of official documentation as a resident of Arizona belies his claim that it is his domicile.

**Mail**

Mr. DeLuca continues to receive mail at the Chestnut apartment, including magazines and billing statements. *Id.* at 122:20-123:2. A tax document labeled "important" addressed to him from Wells Fargo was sent to the Chestnut apartment on May 17, 2013. *Id.* at 195:18-196:7. While Mr. DeLuca has supplied an Arizona address to the companies with which he has credit cards, the address he has given

8

them is not the address of the house he rents there, but the business address of MCS. *Id.* at 204:4-6. According to Mr. DeLuca, he has personal mail delivered to his office because it is "more convenient," but as above, the choice to have personal mail delivered to a business address is at odds with his claim that Arizona is his permanent home for anything other than his business life. *Id.* at 319:19-321:5.

**Financial Records**

Mr. DeLuca's financial records indicate that as of the date the Complaint was filed, credit card companies and banks holding accounts in his name listed the Chestnut apartment as his official mailing address. *See e.g., Id.* at 176:21-177:5; 180:19-181. While Mr. DeLuca stated that he had eventually updated his address information with those entities, he was unable to identify when he made those changes. *Id.* at 166:3-5.

**Taxes**

For his 2013 estimated federal taxes, Mr. DeLuca listed the Chestnut apartment as his address on the Form 1040-ES and enclosed a check dated September 2013 from his personal checking account, which also listed the Chestnut apartment as his address. *Id.* at 289:12-290:18. Mr. DeLuca also paid taxes to the Illinois Department of Revenue in October 2013. *Id.* at 232:12-16. While Mr. DeLuca subsequently made an estimated tax payment to the state of Arizona on January 15, 2014, that payment was made one month after

9

Plaintiff's Complaint was filed, casting some doubt on Mr. DeLuca's motives for making that payment, considering that a tax payment in Arizona would bolster his domicile argument. *Id.* at 236:15-237:19.

Given the totality of facts from which we glean Mr. DeLuca's intent, it is clear that Defendants lack sufficient proof that Mr. DeLuca's domicile is Arizona. The evidence points to Illinois as his center of gravity: his wife lives here; they spend major holidays here; his personal items are stored here; important mail is delivered to the Chestnut apartment; and for the years leading up to the lawsuit, Mr. DeLuca filed his taxes in Illinois. While it is clear that Mr. DeLuca has established a professional presence in Arizona, the corporate and impersonal nature of his housing, coupled with the paucity of his affirmative proof that he has established himself as a permanent resident of Arizona undercut his argument that it is his domicile. The lack of convincing proof, coupled with the admonition that "federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court," compels me to grant Plaintiff's motion to remand. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

III.

For the foregoing reasons, I grant Plaintiff's motion and remand this action to Illinois State Court for lack of subject matter jurisdiction.

**ENTER ORDER:**

*/s/ Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: September 22, 2014